UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SONIA SERPAS,**<br><br>Plaintiff,<br><br>v.<br><br>**DISTRICT OF COLUMBIA, et al.**<br><br>Defendants. | Civil Action 02-02227 (HHK) |

**MEMORANDUM OPINION AND ORDER**

By this action, Sonia Serpas, the mother and guardian of Gabriel Rogers, an individual with multiple sclerosis, appeals a hearing officer's decision denying her request to be reimbursed for the expenses she incurred in obtaining evaluations of Gabriel that she believed were needed in order to formulate an educational program suited to his needs. Defendants are the District of Columbia and the Superintendent of the D.C. Public Schools, who is sued in his official capacity only (collectively, "DCPS"). Serpas alleges that the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1461, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and 42 U.S.C. § 1983 all provide for the denied relief. Before this court are Serpas's motion for summary judgment and DCPS's motion to dismiss, or in the alternative, for summary judgment. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that the motions must be denied, and the case remanded to a hearing officer for further proceedings.

# I. BACKGROUND

**A.     Statutory Background**

Congress passed the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A), 34 C.F.R. § 300.300. The IDEA provides funding and assists states in implementing a "comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families." 20 U.S.C. § 1400(d)(2). States must also ensure that "[all] children with disabilities residing in the State, including children with disabilities attending private schools, regardless of the severity of their disability, and who are in need of special education and related services, are identified, located, and evaluated." 34 C.F.R. § 300.125(a)(1)(I).

The IDEA's free access to public education provision entitles each disabled student to an individualized education program—educational services tailored to the unique needs of each person. 20 U.S.C. § 1414(d)(2)(A) ("At the beginning of each school year, each [state] shall have in effect, for each child with a disability in its jurisdiction, an individualized education program . . ."); 34 C.F.R. § 300.300(a)(3)(ii). A full evaluation of a child is an integral part of developing such a program. Therefore, the IDEA requires states to "conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability . . . ." 20 U.S.C. § 1400(a)(1)(A). By definition, a "free" appropriate public education means that services, including evaluations, must be "provided at public expense, under public supervision and direction, and without charge." 20 U.S.C. § 1401(9)(A).

B.  **Factual Background and Proceedings before Hearing Officers**

Gabriel was diagnosed with multiple sclerosis at age eleven. Approximately, five years later, starting in June 2001, Serpas requested help from DCPS because of her son's deteriorating condition and the difficulties that Cesar Chavez Public Charter School had in keeping him safe at school. Serpas claims that despite her repeated requests for assistance, as well as those of the school, the DCPS did not respond, much less provide free access to public education as required by the IDEA.

Serpas acknowledges that DCPS began to evaluate Rogers in August 2001 and continued to perform evaluations through January 2002. She contends, however, that these evaluations were unsatisfactory. R. 20 (Hearing Officer's Determination, June 5, 2002) ("June 5 HOD"), R. 13 (February 10, 2002 Complaint & Request for Hearing) ("February Request"). As a result of her dissatisfaction, on February 10, 2002, Serpas filed a "Complaint and Request for Hearing." Serpas alleged that the evaluations performed by DCPS were "not comprehensive enough" and that "the recommendations [were] not specific and highly inappropriate for Gabriel." R. 13 (February Request). Serpas also informed DCPS that she had already obtained an independent occupational therapy evaluation, and was obtaining an independent physical therapy evaluation. More broadly, Serpas complained of DCPS's "failure to comply with 34 C.F.R. 300.125 (child-find section); failure to respond to [her] and the charter's schools repeated requests to evaluate Gabriel, develop an IEP and provide an appropriate placement." *Id.* Included within the complaint was a "proposed resolution" that asked DCPS "to fund independent evaluations that the parent is obtaining . . . to convene a BLMDT/IEP meeting and provide an appropriate placement . . . [and] to fund Gabriel's placement at Rock Creek Academy."

In total, Serpas obtained five independent evaluations for Rogers. These evaluations included a neuropsychological evaluation dated February 8, 2002; an occupational therapy evaluation dated January 28, 2002; a speech/language evaluation dated February 4, 2002; a psycho-social report dated February 5, 2002; and a physical therapy evaluation dated February 13, 2002. R. 20 (Hearing Officer's Determination, June 5, 2002) ("June 5 HOD"). Serpas submitted each of these evaluations into evidence during the May 28, 2002 hearing convened to address her complaint.

On June 5, 2002, the hearing officer issued his determination. The hearing officer determined that DCPS had denied Gabriel free access to public education by, *inter alia*, failing to fully evaluate him to determine his eligibility for special education services within 120 days of receiving his mother's request for help. *See* R. 19 (June 5 HOD). The June 5 HOD ordered DCPS to place and fund Gabriel at the Rock Creek Academy, on an interim basis, and to provide transportation to the school.

Believing that the June 5 HOD neither addressed the portions of her February Request that sought reimbursement for the cost of acquiring independent evaluations of Gabriel nor her request for an individualized education plan for him, Serpas filed an amended complaint and request for a hearing. The second hearing officer determination, issued on October 10, 2002, found that DCPS was not required to fund the independent evaluations obtained by Serpas because the initial "HOD did not order DCPS to fund the evaluations . . . [and] [t]he record does not show that the parent appealed any determination rendered by the Hearing Officer nor requested reconsideration of any issue concerning the independent evaluations." R. 6 (Hearing Officer's Determination, Oct. 10, 2002) ("October 10 HOD"). According to the October 10

HOD, the issue of reimbursement for the independent evaluations "was or should have been litigated at the May 28, 2002 Hearing." *Id.*

This action followed.

## II. ANALYSIS

**A.    Claim Preclusion**

DCPS asserts that the October 10 HOD was correct in concluding that Serpas was precluded from litigating the issue of her entitlement to reimbursement for independent educational evaluations again after having done so at the May 28, 2002, hearing.[1] Serpas disagrees, asserting that the doctrine of res judicata properly applied does not prevent her from obtaining the reimbursement to which she is entitled.[2]

As a threshold matter the court must resolve the issue of whether the October 10 HOD

---

[1]    DCPS also moves to dismiss Serpas's complaint as a result of Serpas's supposed failure to comply with LCvR 7. Though this court previously granted DCPS's motion to strike Serpas's summary judgment motion on this basis, the court is satisfied that Serpas has addressed any prior deficiencies in her motion and complied with all appropriate filing requirements. Accordingly, DCPS's motion to dismiss is denied.

[2]    Neither party has challenged whether issue preclusion or claim preclusion can be properly applied by an administrative judge relying on the rulings of an earlier administrative hearing. The court observes that the weight of authority indicates that, unless there is a compelling reason to the contrary, final judgments of administrative bodies will be afforded preclusive effect in future proceedings. *See, e.g., Astoria Fed. Sav. & Loan Assoc. v. Solimino*, 501 U.S. 104, 109 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 9 (D.C. Cir. 2001) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

applied the doctrine of issue preclusion or claim preclusion.[3] DCPS argues that claim preclusion was the basis for the October 10 HOD; Serpas asserts that the October 10 HOD was premised on issue preclusion.[4]  On this point, DCPS is correct. "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (citing Restatement (Second) of Judgments §§ 17, 27 pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001)).

The October 10 HOD states that "addressing the funding of the independent evaluations with respect to the September 27, 2002 Hearing would be relitigating an issue that either was *or should have been* litigated at the May 28, 2002 Hearing." (emphasis added)  R. 6.  The relatively

---

[3]  Res judicata is a doctrine that has vexed many a law student.  The difficulty is, in part, one of nomenclature.  The term res judicata has often been used to refer to two different concepts—"[s]ome use it to mean claim preclusion[,] others employ res judicata in the general sense, to encompass both claim and issue preclusion." *Weaver Corp v. Kidde, Inc.*, 701 F. Supp. 61, 63–64 (S.D.N.Y. 1988).  In order to avoid any confusion, the court will refer to issue and claim preclusion, not res judicata.

[4]  Notwithstanding DCPS's repeated arguments that claim preclusion should bar relitigation of the reimbursement issue, DCPS directs the court's attention to *Yamaha Corp. of America v. United States*, 961 F.2d 245, 257 (D.C. Cir 1992), a case analyzing the effect of issue preclusion.  DCPS cites *Yamaha* for the proposition that plaintiffs should not be permitted to raise claims in a second action merely because they failed to effectively present the issue at the initial hearing.  However, DCPS mistakes the reference in *Yamaha* to "collateral estoppel" as one to "claim preclusion."  In any event, any reference to *Yamaha* is inapposite, for in that case the initial court made specific findings with respect to the disputed issue.  Here, no specific findings related to the reimbursement issue were articulated by the June 5 HOD.

broad preclusive effect that the hearing officer sought to give the prior HOD is consistent with claim preclusion, not issue preclusion. Typically, issue preclusion is applied when an issue has been "*actually* and *necessarily* determined by a court of competent jurisdiction." *See McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986). Nowhere in the October 10 HOD is it suggested that a finding was made in the initial hearing regarding independent evaluations, nor that the issue of reimbursement was necessarily decided as a result of some other holding in the June 5 HOD.[5] Rather, the October 10 HOD maintains that Serpas slept on her rights by failing to adequately litigate her reimbursement claim, or alternatively, that she failed to raise the issue at all. The October 10 HOD expressed concern that DCPS was being forced to defend the same claim twice, a danger that claim preclusion is certainly intended to address. As the Supreme Court has stated: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent judgments." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

The applicability of claim preclusion doctrine typically hinges on whether the same cause of action is implicated in both the initial and subsequent lawsuits. When determining if the same cause of action is at issue, the court is directed to look at whether the cases "share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United*

---

[5] The court recognizes that "even in the absence of *any* opinion a judgment bars relitigation of an issue necessary to the judgment...the adjudicator's silence on the issue is relevant only insofar as it may tend to obscure whether the issue was truly litigated." *American Iron & Steel Inst. v. U.S. Envtl. Prot. Agency*, 886 F.2d 390, 397 (D.C. Cir. 1989). The court reiterates, however, that neither the October 10 HOD nor DCPS have argued that the reimbursement issue was a necessary component of the June 5 HOD.

*States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  To answer this question, the court should consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations of business understanding or usage." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983).

Under this standard, the court would be hard-pressed to reverse the decision of the October 10 HOD.  There is little question that the issue of reimbursement for the independent evaluations of Rogers was "related in time, space, and origin" to the issues presented to the initial hearing officer: "(1) Did DCPS/CCPS violate the 120-day timeline for evaluation for special education services, (2) Is the CCPS an appropriate placement for Gabriel, (3) Did/can Rock Creek Academy provide educational benefit to Gabriel?"  R. 19 (June 5 HOD).  Indeed, as both parties acknowledge, the independent evaluations obtained by Serpas and the evaluations performed by DCPS were all submitted as evidence during the May 28, 2002 hearing.

Application of claim preclusion, however, is inappropriate when, as here, a plaintiff conscientiously asserts her rights in the first forum.  There is persuasive authority for the proposition that claim preclusion doctrine does not bar a plaintiff from asserting a claim in a subsequent suit when her failure to raise the claim in an earlier action is attributable to excusable ignorance.  *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4415 (2d ed. 2002) (citing *Bolte v. Aits, Inc.*, 587 P.2d 810, 813–14 (Haw. 1978) (The rule [against splitting a cause of action] presupposes the fact that the plaintiff is consciously acting inequitably in suing for only part of his claim, knowing that he was unnecessarily bringing vexatious lawsuits against the defendant or careless as to whether he was causing such vexation));

8

*In re Belmont Realty Corp.*, 11 F.3d 1092, 1100 (1st Cir. 1993) (holding that, "[d]epending on the reason for [plaintiff's] ignorance [of a claim], claim preclusion might not apply."). If claim preclusion does not bar actions where a plaintiff failed to raise claims because of excusable ignorance, then, *a fortiori*, a plaintiff who actually asserts a claim in the first forum—and through no fault of her own has those claims ignored—should not be precluded from raising the claim in a subsequent hearing.

    DCPS does not dispute, nor could it, that Serpas presented the issue of reimbursement for the independent evaluations of Rogers during the initial May 28, 2002 hearing. As stated above, Serpas expressly sought DCPS "to fund the independent evaluations that the parent is obtaining . . . ." R. 12 (February Request). Serpas argued in her complaint that, because DCPS's evaluations were "not comprehensive enough" and that "the recommendations [were] not specific and highly inappropriate for Gabriel," she was entitled to reimbursement. R. 13 (February Request). In addition, all of the educational evaluations—both those obtained by Serpas and those administered by DCPS—were admitted into evidence during the May 28th hearing. Despite the clear presentation of the issue, the June 5 HOD failed to consider the question of funding for the independent evaluations.

    Though the district court is expected to give "due weight" to the determinations of the hearing officer, less weight is due to a hearing officer's determinations not involving educational expertise "because a federal court is just as well suited to evaluate the situation." *See Kings Local Sch. Dist. Bd. Of Educ. v. Zelazny*, 325 F.3d 724, 728 (6th Cir 2003); *accord McKenzie v. Smith*, 771 F.2d 1527, 1535 n.17 (D.C. Cir. 1985). Such is the case here. By precluding Serpas from litigating the issue of reimbursement during the second hearing, the October 10 HOD denied

9

Serpas any opportunity to seek funding for her child's educational evaluations as permitted by the IDEA. *See* 34 C.F.R. § 300.502(b)(1) ("A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency."). Once Serpas requested an independent educational evaluation at public expense, as both parties acknowledge she did, it was DCPS's burden to demonstrate that the evaluations obtained by Serpas "did not meet agency criteria," or that the evaluations performed by DCPS were appropriate. *See* 34 C.F.R. § 300.502(b)(1)–(2).

Applying claim preclusion in this instance fails to effectuate the policy considerations underlying the doctrine. That is to say, there is no danger of an inconsistent judgment when no initial judgment has been made. Similarly, Serpas did not intend to subject DCPS to the burden of defending multiple lawsuits, but rather endeavored to raise all relevant issues in the first instance. That the June 5 HOD failed to address the reimbursement issue was through no fault of Rogers.[6]

Accordingly, DCPS's motion for summary judgment is denied.

**B. Remand**

---

[6] The court is unpersuaded by DCPS's argument, which echoes the reasoning of the October 10 HOD, that any significance should be attributed to Serpas's failure to move for reconsideration of, or appeal, the June 5 HOD. DCPS insists that Serpas failed to preserve the issue for future consideration through these omissions, yet DCPS ignores the nature of the June 5 HOD. It is unclear that Serpas had any basis to move for reconsideration of an issue that was never considered in the first place. Furthermore, as stated in this court's October 20, 2003 opinion, "[T]he June 5 HOD purported to provide only an interim solution to Serpas's claims. June 5 HOD at 4. As a result, the October 10 HOD did not treat the June 5 HOD as final on all issues raised by plaintiff." *Serpas v. Dist. of Columbia*, No. 02-02227 (D.D.C. Oct. 20, 2003). Given the ambiguity surrounding the June 5 HOD, the court finds that Serpas preserved the reimbursement issue in the most logical manner available—by filing an amended request for a due process hearing on August 8, 2002.

Both parties urge the court to rule on the underlying issue—whether Serpas is indeed entitled to reimbursement for the independent educational evaluations she obtained for her child. Serpas insists that, because the June 5 HOD found that DCPS had denied Rogers free access to public education by failing to comply with the 120-day time limit for evaluating his special education needs, the June 5 HOD also implicitly awarded Serpas reimbursement for the independent evaluations. DCPS counters that Serpas has not demonstrated that the evaluations performed by DCPS were inadequate and that the privately financed evaluations were necessary—accordingly, there is no entitlement to public funding.

As discussed above, the June 5 HOD did not address the reimbursement issue, and the court refuses to speculate how the June 5 HOD viewed the issue by inferring a finding from its circumscribed conclusions. Because the October 10 HOD declined to evaluate Serpas's reimbursement claim, Serpas's entitlement to reimbursement has never been adjudicated in a due process hearing. In reviewing IDEA administrative proceedings, courts are instructed to "afford some deference to the expertise of the hearing officer and school officials responsible for [a] child's education," *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993), yet in this instance the court has been denied the benefit of this expertise.

Because district courts are counseled against "imposing their view of preferable educational methods upon the States," *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07 (1982), and in light of the failure of the hearing officers to assess Serpas's entitlement to public funding for Gabriel's independent educational evaluations, the court denies Serpas's motion for summary judgment and remands the case to a hearing officer for appropriate action. *See Goldstrom v. Dist. of Columbia*, 319 F. Supp. 2d 5, 9 (D.D.C. 2004) (remanding case where hearing officer did not

address whether defendants violated IDEA); *Armstrong v. Dist. of Columbia*, 2005 WL 433448, at * 3 (D.D.C. 2005) (remanding case where hearing officer failed to explain the factual bases for his findings).

### III.  CONCLUSION

For the aforementioned reasons, it is this 28th day of October, 2005, hereby

**ORDERED** that Serpas's motion for summary judgment [Dkt. #21], is **DENIED**, and it is

**FURTHER ORDERED** that DCPS's motion to dismiss or, in the alternative, for summary judgment [Dkt. # 24], is **DENIED**.

                                                Henry H. Kennedy, Jr.
                                                United States District Judge